**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 2:13-CR-1075-2 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | CORPUS CHRISTI, TEXAS |
| | . | FRIDAY, MAY 21, 2021 |
| JORGE JUAN TORRES LOPEZ, | . | 08:29 A.M. TO 04:01 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . .

**SENTENCING HEARING**

**PARTIAL TRANSCRIPT**

**PSR OBJECTION ARGUMENT**

**BEFORE THE HONORABLE NELVA GONZALEZ RAMOS**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: LETITIA GARZA

OFFICIAL INTERPRETER:          M. MACOSSAY

CASE MANAGER:                  BRANDY CORTEZ

TRANSCRIPTION SERVICE BY:

**Trinity Transcription Services**
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
Trinitytranscripts@aol.com

**Proceedings recorded by electronic sound recording;**
**Transcript produced by transcription service.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 2:13-CR-1075-2 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | CORPUS CHRISTI, TEXAS |
| | . | FRIDAY, MAY 21, 2021 |
| JORGE JUAN TORRES LOPEZ, | . | 08:29 A.M. TO 04:01 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . .

**SENTENCING HEARING**

**PARTIAL TRANSCRIPT**

**PSR OBJECTION ARGUMENT**

**BEFORE THE HONORABLE NELVA GONZALEZ RAMOS**
**UNITED STATES DISTRICT JUDGE**


Appearances:

**The UNITED STATES:**               **JON MUSCHENHEIM, ESQ.**
                                     **LANCE A. WATT, ESQ.**
                                     Office OF U.S. Attorney
                                     Southern District of Texas
                                     800 North Shoreline Boulevard
                                     Suite 500
                                     Corpus Christi, TX 78401


**DEFENDANT TORRES LOPEZ:**          **THOMAS J. MCHUGH, ESQ.**
                                     106 S. St. Mary's Street,
                                     Suite 260
                                     San Antonio, TX 78205

                                     **DEREK B. HILLEY, ESQ.**
                                     **CARLOS A. SOLIS, ESQ.**
                                     Hilley & Solis Law PLLC
                                     6243 W. Interstate 10, Suite 503
                                     San Antonio, TX 78201

Appearances (cont.):

U.S. Marshall:                    Deputy M. Seguin

U.S. Probation Office:            Stan Ruta
                                  M. Huerta

Transcriber:                      Cheryl Battaglia
                                  Trinity Transcription Services
                                  1081 Main Street
                                  Surgoinsville, TN 37873
                                  281-782-0802

1

1      **Corpus Christi, Texas; Thursday, May 13, 2021; 01:07 p.m.**

2                  **(OFFICIAL INTERPRETER PRESENT)**

3              **(PARTIAL TRANSCRIPT - OBJECTION ARGUMENT)**

4          **THE COURT:**  Court calls *Cause Number 2:13-CR-1075,*

5   *Defendant 2, United States of America versus Jorge Juan Torres*

6   *Lopez.*  Would the Government announce?

7          **MR. MUSCHENHEIM:**  John Muschenheim for the United

8   States.  Good morning, your Honor.

9          **THE COURT:**  Good morning.

10         The defense?

11         **MR. MUSCHENHEIM:**  Good morning, your Honor.  Tom

12  McHugh, Carlos Solis and Derek Hilley are present representing

13  our client, Jorge Juan Torres Lopez.  He is present.  We are

14  ready to proceed.

15         **THE COURT:**  All right.

16         I think that the first matter we need to address,

17  Defense had filed a motion earlier this week regarding a

18  request for limited release of a Presentence Report, Plea

19  Agreements, and addendums, and then statements of testifying

20  witnesses.

21         So, Mr. Muschenheim, I don't know if you want to

22  address -- we'll address the Presentence Report here shortly.

23  But the other matters.

24         **MR. MUSCHENHEIM:**  I think the other matters are

25  resolved.  But we worked diligently to be sure we have resolved

2

1    those, your Honor.  I think the Presentence Report is the only

2    thing left on that.

3         **MR. MCHUGH:**  Yeah.  And I think we're down to the

4    Report, your Honor.

5         **THE COURT:**  Okay.  And that was in regard to

6    Castillo's Presentence Report.  Is his attorney present?

7         **MR. MUSCHENHEIM:**  Mr. Salinas is in the back, your

8    Honor.

9         **MR. SALINAS:**  Good morning, Judge.

10        **THE COURT:**  Oh, good morning.

11        Okay.  So there -- there was a request, I did -- did

12   not see the request limited in any way to certain parts of the

13   Presentence Report or anything.  Typically, Presentence Reports

14   are confidential.  I'm not sure what the defense is asking.

15   Unless --

16        **MR. MCHUGH:**  Well we're certainly not asking, your

17   Honor, for -- for identifiers in terms of addresses and all

18   that.  In particular, just a description of the offense, and

19   then the descriptions in the report regarding role in the

20   offense, sophisticated means, the relevant conduct in terms of

21   dollar amount.

22        It's -- it's alleged that if not the same scheme,

23   it's a common scheme.  And the parties may have crossed once or

24   twice.  So we just wanted to -- to look at that.  Because that

25   is the Government's description.

1          **THE COURT:**  So what is set out in the offense

2     conduct.

3          **MR. MCHUGH:**  I'm sorry, your Honor?

4          **THE COURT:**  Only the portion of the report set out in

5     the offense conduct.

6          **MR. MUSCHENHEIM:**  Well I have to -- I -- yeah.  I

7     mean, not interested in the -- in -- in the -- in the -- I've

8     got to look at it, your Honor, in terms of --

9          **(Pause in the proceeding.)**

10          **MR. MCHUGH:**  Yeah.  That's offense conduct, role in

11     the offense.

12          Yes, your Honor.  So that would be Part A.

13          **THE COURT:**  Okay.  I'm going to let Mr. Muschenheim

14     respond, and then I'll let Mr. Salinas also respond.

15          **MR. MUSCHENHEIM:**  Your Honor, the report is the

16     report created by a Probation officer from -- admittedly from

17     Government reports.  All the Government reports have been made

18     available to this Defendant for very good reasons.

19          But they're asking for the Guideline calculation,

20     they use the word "relevant conduct."  That is a matter that

21     I've never seen a Court turn over to the defense.  If they'll

22     agree to take his Guideline score, I guess then maybe I

23     wouldn't oppose it.

24          But it wouldn't be in their benefit.  And I would --

25     would definitely oppose and the weight of authority certainly

4

1  from the Fifth Circuit is -- is that the Court should review

2  Presentence Report for anything exculpatory.

3          I have seen judges give the Criminal History Section

4  out.  And we wouldn't object to that.  There is none.

5  Mr. Castillo has no criminal history as they know.

6          But other than that, I -- I guess there could be a

7  situation where it might become *Brady* if Mr. Castillo took a

8  different position on the stand when he testifies from his

9  acceptance of responsibility statement that is recorded in

10 there.  Maybe that would be a time that they should see that --

11 if those two statements of Mr. Castillo were somehow different.

12 I guess that could be discoverable.

13         But other than that, we're opposed, your Honor.

14         **THE COURT:**  Cause I -- and I do think there's case

15 law saying that matters in the Presentence Report do not

16 constitute statements --

17         **MR. MUSCHENHEIM:**  They do not.

18         **THE COURT:**  -- by anyone.

19         **MR. MUSCHENHEIM:**  They do not.

20         **THE COURT:**  Let me hear from Mr. Salinas, and then

21 Mr. McHugh, you can proceed as well.

22         **MR. SALINAS:**  Your Honor, may I remove this while I

23 address the Court?

24         **THE COURT:**  Yes.  Yes.

25         **MR. SALINAS:**  Your Honor, we're -- we're opposed to

1    it.  I -- I think the position we're taking, Judge, is that

2    obviously this is a report that belongs to Judge Jack.

3              I take a little bit of comfort in the fact that I've

4    been asked to -- to -- to state a position.  I've never been

5    put in this situation in -- in 28 years that I've been a

6    lawyer.  And we adamantly object to anyone other than the Court

7    being able, or the Government, being able to look at the PSI.

8              The other position is this is, as stated out by them,

9    I think that the bulk of what's in the PSI is actually from the

10   investigative materials that was provided by the different

11   agencies.  So I don't see what the benefit is in it.  And in

12   addition to that, Judge, in the last five years that this case

13   has been pending, there's been a -- again, I'm not going to get

14   into it, but there's issues concerning my client's welfare,

15   security.

16             I -- I don't even want to take the remote chance that

17   someone may take something in this report and use it for

18   something else.  I think that the only thing I would add is

19   that I agree with Mr. Muschenheim in the sense that they may be

20   entitled to *Giglio* and -- and *Brady.*  And I agree with -- with

21   Mr. Muschenheim and the Government that there would be a

22   situation if -- I doubt it, that Mr. Garcia would take a

23   different position.  But if he did, I'm sure that

24   Mr. Muschenheim would turn -- turn that over to them.

25             So we're adamantly objecting to the release of this

1   report to anyone, Judge.

2              **THE COURT:**  Okay.  Final comments, Mr. McHugh?

3              **MR. MCHUGH:**  Yes, your Honor.

4              Of course, the Defendant and his team have no idea

5   what is in that report, what may be *Giglio*, what may be

6   exculpatory, whether or not everybody is a figure, an

7   organizer, and a leader.

8              And these issues may become relevant in terms of the

9   Defendant's arguments to the Court.  It may -- may even be

10  relevant in terms of cross examination of witnesses.

11             Surely, there can be an -- a protective order entered

12  by this Court.  Because I think all of us as officers of the

13  Court who are present today, are -- are very sensitive to these

14  reports and its information.

15             But the Defendant, not knowing what's in there,

16  knowing these are related cases, believes that he should be

17  given access to that.  And we request same.  Thank you.

18             **THE COURT:**  Okay.  So the Court does find, and as the

19  law states, those reports are confidential.  Matters in the

20  report do not constitute statements of anyone.  The offense

21  conduct set out there largely drawn, or entirely drawn, from

22  reports provided by the Government.

23             So at this time, I'm going to request for that

24  Presentence Report.  Again, I know there's cases out there

25  saying the Court can review *in camera*, and I have reviewed it.

7

1   So that when Mr. Castillo testifies, if there is any

2   exculpatory or impeachment material, as stated by the

3   Government, you know, in case he testifies differently, then we

4   can certainly revisit that matter.

5          Okay.

6          **MR. MCHUGH:**  So if -- so -- so it's the -- the

7   Court's ruling that in its *in camera* review if it finds

8   information to be *Brady, Giglio,* as it relates to -- to this,

9   the Court would notify the Defendant of that?

10          **THE COURT:**  Yeah.  But I -- I think I need to wait

11   until Mr. Castillo testifies.

12          The matters set here, as I said, drawn from reports

13   already provided to the defense here, these are not statements

14   by anyone, what's stated here, which you would be entitled to

15   if there were statements in here.

16          So at this time, until the Defendant testifies, and I

17   can, you know, assess that.  And then I'll go back and look at

18   the report.  We can take a break.  I'll go back and look at it

19   again to be sure.  And we can revisit the matter.  Okay?

20          **MR. MUSCHENHEIM:**  Thank you, your Honor.

21          **THE COURT:**  Okay.  Anything else on that issue, or

22   that motion?

23          **MR. MUSCHENHEIM:**  No, your Honor.

24          **THE COURT:**  Then let's proceed to sentencing.  I know

25   that we need to address various objections.  But I see

8

1   Mr. Torres -- Torres Lopez.  Sir, if you'll stand and raise

2   your right hand, please.

3        **(Defendant sworn)**

4        **THE COURT:**  Okay.  Mr. Torres, would you tell us your

5   full name, sir?

6        **MR. MCHUGH:**  Your Honor, would you prefer that he

7   stand?

8        **THE COURT:**  He can -- he can remain seated there at

9   the microphone.  That's fine.

10       **MR. MCHUGH:**  And, your Honor, if the Court recall

11  for -- I'm not pointing --

12       **THE COURT:**  Yeah.

13       **MR. MCHUGH:**  -- at the Court.  I'm pointing at my

14  chin, your Honor.

15       **THE COURT:**  No.  When I'm speaking, I take my mask

16  off.  If you all are comfortable with him taking your -- his

17  mask off there, it's a -- it's a better record.

18       **MR. MCHUGH:**  And I'm referring to mine.

19       **THE COURT:**  Yeah.  So we intend to, when I'm not

20  speaking, I'll put mine back on.

21       Okay, sir.  Would you tell us your full name?

22       **DEFENDANT TORRES LOPEZ:**  Jorge Juan Torres Lopez.

23       **THE COURT:**  We're here today for sentencing.

24       On June 17th of 2020, you entered a plea of guilty to

25  the offense in -- set out in Count One of the Indictment,

9

```
 1   Conspiracy to Commit Money Laundering.

 2            That plea was before this Court.  I ordered a

 3   Presentence Investigation and Report to be done.  Have you

 4   received a copy of that Presentence Report?

 5            DEFENDANT TORRES LOPEZ:  Yes.

 6            THE COURT:  Did you have a chance to read the report?

 7        (Pause in the proceeding.)

 8        (Voices speaking off the record.)

 9            DEFENDANT TORRES LOPEZ:  Yes.

10            THE COURT:  Okay.  And did you have a chance to

11   discuss the Report with your attorney?

12            DEFENDANT TORRES LOPEZ:  Yes.  Yes.

13            THE COURT:  Okay.  There are various objections

14   filed.  So Mr. McHugh, are you going to take the lead on -- on

15   those objections?

16            MR. MCHUGH:  Yes, your Honor.

17            THE COURT:  Okay.  You -- you can proceed.

18        (Pause in the proceeding.)

19            MR. MCHUGH:  Your Honor, may I address the Court from

20   the lectern?

21            THE COURT:  Yes.

22            MR. MCHUGH:  Your Honor, the -- I'm referring to the

23   Report that was filed on August the 3rd of 2020, a 20 page -- a

24   25 page report prepared by Michelle Huerta, Senior United

25   States Probation Officer.
```

1          We have as -- as Defendant's team and with him, and

2     in his presence, we have had the -- the opportunity and the

3     occasion on many times on many occasions to -- to review this

4     with him.  We filed our objections with the Court.  And they

5     are -- they are a matter of record.

6          Would the -- would the Court like me to -- to state

7     them?

8          **THE COURT:**  Yes.  So you can argue your objections.

9     And then I'll let the Government proceed.  It's my

10    understanding the Government will present witnesses regarding

11    the objections.

12         **MR. MCHUGH:**  May I have one moment, your Honor.

13         **(Pause in the proceeding.)**

14         **(Voices whispering.)**

15         **MR. MCHUGH:**  So, your Honor, the Defendant entered

16    his plea on or about June of 2020.  There was a Plea Agreement

17    Addendum filed with the Court.  There's a stipulation of facts

18    in support of the Plea Agreement.  Defendant, in essence, your

19    Honor, today would object to the following:  the relevant

20    conduct in terms of the -- the dollar amount; whether or not

21    the sophisticated means was employed in -- in his conduct;

22    whether or not -- and what his -- what his role was in the

23    offense.

24         And so, he has, according to -- to the Report, he has

25    had a Level 26, which is between 3 ½ million and -- and -- and,

1    I believe, less than 9 million.  And so that's -- that's 18

2    points.

3            In addition to that, he received two for a 1956,

4    which puts him up to 20.  And then he also received a bump

5    under sophisticated means, plus two.  And his role in the

6    offense is plus three.  He also received acceptance of

7    responsibility, which then lowered it to -- by -- by three.

8            The Defendant would respectfully argue to the Court,

9    your Honor, beginning number one, and I'm referring to -- to --

10   to the Addendum, the Plea Agreement Addendum.  And I'm also

11   referring to the Defendant's sentencing memo, your Honor, where

12   he -- he addresses the matter of relevant conduct in this case.

13           If -- if I could just say by -- by way of preamble,

14   the Government in this case, your Honor, has always been

15   available to the Defendant and his team.  And those are -- I'm

16   referring to the two lawyers who are present today and one who

17   preceded them.  They've always been available to -- to meet

18   with us and ask -- ask -- allow us to ask questions.  And if

19   they're able to provide an answer, they certainly did.

20           So in the Plea Agreement Addendum on page 12, your

21   Honor, there is a -- a -- at the bottom it says,

22           "Defendant Torres acknowledges $350,000 of

23           the above total were bribe payments in

24           routine for road building contracts that's

25           in Mexico."

1          Analysis of the account of activity -- of

2          account activity of Defendant Castillo

3          Cervantes his business account and

4          Defendant Torres account at Inter Banc

5          McAllen, in McAllen, confirms that these

6          payments were made.  However, Defendant

7          Torres disputes the nature of the total

8          amount received."

9          And so by -- this is a -- a -- a bit of background,

10   your Honor.  But to put it in a context, the Defendant was

11   arrested in Mexico.  He agreed not to challenge his

12   extradition.  He came to the United States.  The Government has

13   agreed that he has accepted responsibility.

14          And so nothing I am about to say, your Honor,

15   would -- would -- would change that.  He -- he accepted

16   responsibility on the day that he -- he entered the plea.

17   And -- and -- and today he is his harshest critic.  And --

18   and -- and he continues today.

19          There was a -- going to the Addendum, your Honor,

20   it -- it -- it comes to $731,000.  And -- and -- and the

21   Defendant would argue to the Court that that is the relevant

22   conduct in this case.  Though he acknowledged 350, he -- he

23   today acknowledges $731,000.

24          In -- in our negotiations with the Government and in

25   our -- our memo, and in our conversations with our client,

1   relevant conduct was, of course, a very important component to

2   the -- to the Report.  And -- and -- and the difference between

3   the $731,000 and more than 3 -- 3.5 million as -- as set out in

4   our summary, sentencing memorandum is -- is a -- a -- a

5   difference, your Honor, of -- of 4 levels.

6           And the Defendant is 67 years old.  And so as one

7   looks at this addendum, it says, "However, Defendant disputes

8   the nature of the total amount received."  He's -- he's

9   referring to here, your Honor.  It says, "Total."  And it says,

10  "$731,000."  Okay.

11          And -- and so what happens is, he -- this is -- this

12  is what he -- he understood was to be his exposure.  What is

13  said here, the total amount received, and they have the total

14  here of 731.  He originally acknowledged 350.  Today he -- he

15  does acknowledge that -- that number.

16          And they -- and I am not challenging the Government

17  at all, because we have -- we have visited with the client

18  regarding these numbers.  And we attempted to communicate to

19  him that his relevant conduct was not limited to what is

20  represented here in this -- in this Addendum.

21          However, so the Court knows, the -- the total on the

22  Addendum was 731, which he now admits to.  And -- and the

23  Presentence Investigation Report shows more than 3 -- 3.5

24  million.  So that's a difference of more than 550,000 or plus

25  14, the more than 3.5 is plus 18.  That's a -- that's a

14

1  difference of four points to him.

2  And so he -- he -- he would object to -- to that --

3  to that inclusion.  He -- he does, your Honor, he does today

4  accept responsibility for the money -- his monies contained in

5  the Bermuda account.  But he -- he doesn't accept, and should

6  not be -- be further tagged in terms of the relevant conduct,

7  the money that's found in Mr. Villarreal's account.  Because

8  that -- that account is also used by him to -- to arrive at

9  these numbers.

10  I would -- yes --

11  **(Pause in the proceeding.)**

12  **MR. MCHUGH:**  And we'll -- we'll get a little more

13  deeper into the -- into the weeds on that in just one minute,

14  your Honor.

15  And -- but then on -- on sophisticated means, your

16  Honor, if the -- the record will show that he opened up bank

17  accounts.  He opened up bank accounts in his name.

18  They will -- they will show -- it's clear when the --

19  when the investigation began, when the -- when the accounts

20  were opened, and what his representations were when he opened

21  those accounts.  And it was before the -- the investigation.

22  And to go into the records we -- we see that he -- he

23  identifies, and we've included these, your Honor, as exhibits

24  in our sentencing memo, the -- his application and his

25  acknowledgement of his employment as a finance secretary.

1          So -- so none of these, your Honor, going into the

2    money laundering aspect, he -- he's out there.  He's saying

3    this is who I am.  This is -- this is what I do.  And if truth

4    be told, the -- the account was moved offshore because

5    admission was received.  And this product was presented to --

6    to Mr. Torres Lopez and -- and he accepted that.

7          But we would -- we would argue that this is -- this

8    is not sophisticated at all.  And then in -- in terms of his

9    role in the offense, your Honor, he -- he's embarrassed by what

10   happened.  He's not running from what happened.  But he's

11   representing to the -- to the Court that he was hardly a leader

12   or an organizer in this.  He was a -- an interim Governor for

13   less than one year.

14         Yes, he had worked as a -- as a -- a finance --

15   Secretary of Finance there at -- at (indiscernible).  But he --

16   when it comes to his role in the events, this was a scheme that

17   was in place after him.  It was a scheme that remained in

18   place.  It was before him, and remained in place after him.

19         As well, it shows, your Honor, that -- that

20   Mr. Castillo, who I believe will be a witness here today, it is

21   he who has the -- the relationships through -- throughout

22   Mexico.  And -- and the Defendant, if anything, rather than

23   being an organizer or a leader, he was led in this.  He --

24   he -- he did not supervise five or more people in terms of any

25   scheme.  And he -- he would argue that these -- these not be

16

1   included.

2           So with that, your Honor, and with acceptance of

3   responsibility, and he is not today challenging the -- the two

4   point bump for the -- for the money laundering as set out in

5   the Defendant's Sentencing Memorandum.

6           He would -- he would be under his calculation a Level

7   21 and not a Level 30.  And that would be 37 to 46 months, plus

8   we would argue, your Honor, that -- and I -- I don't believe

9   the -- the Government will object that a -- that a variance

10  would be applicable to the Defendant.  He -- he's been in

11  custody for 835 days, your Honor, through yesterday.  And we,

12  later on this morning, we will advance our arguments relating

13  to the 33 -- 3553 factors.

14          Mr. Castillo, Mr. Solis is here.  And if he can, your

15  Honor, if -- if he's permitted, if we could just tag team for a

16  moment and address some of the facts addressed here.

17          **THE COURT:**  That's fine.

18          Still regarding the objection, right?

19          **MR. MCHUGH:**  Yes.

20          **MR. SOLIS:**  Yes, your Honor.

21          **THE COURT:**  We're still doing this.

22          I do want to ask, though, regarding the role

23  adjustment, I didn't really see much in the Presentence Report

24  regarding that issue.  But is the Government feel differently?

25  You all may present evidence today, but I really -- I went back

17

1    and I looked, and I looked, and --

2           **MR. MUSCHENHEIM:**  We do, your Honor.  This particular

3    case four level, three level, two level.  I think Probation

4    assessed the one in the middle as far as saying a manager

5    supervisor.

6           I think based on the testimony and the way it's

7    outline in the Presentence Report, the role, and the

8    interaction, and different positions of Government, and how the

9    money was divided once the overcharged contracts were -- the

10   money was funneled back, I think the Government's position is

11   that it does apply a leadership role.

12          I think the question would be of whether or not the

13   Court disagrees with whether or not it's a three level, then

14   the two level.  But the Government does believe that there is a

15   role adjustment to be had, based on the circumstances and

16   interaction between the individuals.

17          **THE COURT:**  All right.  I -- I didn't think it was

18   very clear from the way I read the report.  But I'm sure you

19   all will clarify it for me.

20          **MR. MUSCHENHEIM:**  Yes, your Honor.

21          **THE COURT:**  Go ahead, Mr. Solis.

22          **MR. SOLIS:**  Your Honor, if I may disagree with the

23   Court.  I'm not sure they'll be able to clarify.

24          **THE COURT:**  Well maybe not.  I'm being open here.

25          **MR. SOLIS:**  Thank you, your Honor.  Thank you for

1    allowing me to speak.

2         I won't touch on the particular point that the Court

3    just addressed with Mr. Watts.  I would agree with the Court.

4    It wasn't very addressed as far as his role offense.  And to no

5    fault of the Government, unfortunately three different

6    probation officers are assessing role levels for the three

7    different Defendants.

8         Mr. Castillo, as you know, has been assigned to

9    another Court.  As the Court is aware, during his plea, the

10   Government stated he may receive leadership points, which is

11   one of the reasons we were arguing for that Presentence Report,

12   your Honor.

13        If he is being assessed leadership points, and our

14   client is being assessed leadership points, and Mr. Villarreal

15   may be assessed leadership points in the Western District,

16   although we don't know, because in seven years since his plea a

17   PSR has not been prepared, your Honor.  But we asked for it.

18        Under the Government's theory, everyone in this

19   offense will be some sort of lead or organizer.  Everyone is

20   driving the car.  No one is a passenger.  And we strongly

21   disagree with that particular assessment.

22        Under that theory, we might as well raise the offense

23   level so that everyone will be several points higher from the

24   get go, instead of truly assessing the role in the offense.

25        If I may hand the Court a small exhibit, your Honor,

1   that I prepared.  And I've handed a copy to the Government.

2          **(Counsel approaches the Court.)**

3          **(Pause in the proceeding.)**

4          MR. SOLIS:  Unfortunately, the Court is being placed

5   in a position where the Court will have to determine whether

6   another nation's investigation into the very account that we're

7   dealing with today, is accurate or not.

8              It's a very difficult position for the Court.  It's a

9   very difficult position for the Defendant.  And I imagine it's

10  a difficult position of the Government.

11             If you see the exhibit, your Honor, on the left side

12  we have the International Banc account, which the Defendant has

13  already responsibility for.  He doesn't deny it.  And he

14  regrets that particular conduct.

15             On the right, you see basically what we're deciding

16  with the objections, your Honor, just the Chase Bank account.

17  That particular bank account was investigated by the Government

18  in Mexico to the tune of nearly 2,000 pages.  We took the

19  liberty to give the Court a little over 100 pages in the

20  exhibit.

21             The Government of Mexico looked at the very bank

22  account that the Government is accusing our client of

23  laundering money.  And the Government of Mexico concluded that

24  that money belonged to our client.

25             I understand that the Government's position is

1  different.  I understand that the Government started with a

2  theory in this particular case to set out to prove that that

3  particular money came from bribe payments.  Unfortunately, and

4  although that conduct will fall beyond the statute of

5  limitations, the Government does not have enough proof to link

6  whatever allegations they have on Mr. Castillo to the Mexican

7  bank that then wired the funds to Chase, that then wired the

8  funds to Bermuda.

9           Amongst our exhibits, your Honor, we have included

10  portions of the Mexican investigation.  And I was thinking

11  about this last night, your Honor, and I reviewed those

12  exhibits one more time.  And I realized that a single page in

13  that Mexican investigation it's all been translated to English,

14  shows that our client disclosed to the Mexican Government as

15  part of his obligation as a Government official, the gift he

16  received from his father that funded the Mexican bank that

17  funded Chase.

18           And if I may hand the Court one more exhibit?

19           **THE COURT:**  Okay.

20      **(Counsel approaches the Court.)**

21      **(Pause in the proceeding.)**

22      **MR. SOLIS:**  As the Court is aware, the Chase account

23  that we're here for today was opened in 2008, which is when our

24  client received the gift from his family.

25           The document I just handed the Court is part of the

1    2,000 pages that were previously disclosed to the Government.

2    And the second to the last page, your Honor, if I may point the

3    Court to it, shows our client, in 2009, 3 years before this

4    investigation even started, telling his own Government that he

5    received the money that then funded the Chase account then

6    funded the Bermuda account.

7            **(Pause in the proceeding.)**

8            **MR. SOLIS:**  It would be an impossibility for our

9    client to even know that this investigation would begin and

10   start trying to set up some sort of scheme.  Our client

11   disclosed this money to his own Government.

12           And subsequently, the Government investigated the

13   account and found it to be legal.  This document was prepared

14   contemporaneously.  And it shows that our client did not do

15   anything wrong with that particular bank account.

16           That particular bank account, your Honor, is

17   basically increasing our client's exposure to the tune of six

18   years, when there is no proof that the money he received was

19   from bribe payments.

20           Our client disclosed that he was a Mexican

21   functionary the day he opened the Chase account.  I don't know

22   if there were bank failures at the time.  But I do know that he

23   disclosed it from the very moment he did, just like he

24   disclosed the gift from his father in 2009.

25           **(Pause in the proceeding.)**

22

1    **MR. SOLIS:**  I'd like to just go back for a second on

2    the leadership points, your Honor.  Our client received less

3    than a million dollars for this offense, even if we were to

4    believe that the Chase money was part of that scheme, which it

5    was not.  That's two million dollars.

6          Mr. Castillo, according to the Government, has

7    received over $35 million for his conduct in illegal proceeds.

8    Mr. Javier Villarreal has received over $25 million in illegal

9    proceeds.  He also remains a fugitive of Mexico for two

10   different allegations, one which is the subject of this

11   investigation.

12         So in as far as leadership, your Honor, I think we

13   should consider who received the most benefit from the conduct.

14      **(Pause in the proceeding.)**

15      **MR. SOLIS:**  I know Mr. McHugh addressed the

16   sophisticated means, so I won't bore the Court with any more of

17   those arguments.

18         I'm a little bit familiar with some of the documents,

19   your Honor.  So if the Court has any questions regarding those,

20   I've tried to tab them out and I'm happy to hand those to the

21   Court if you'd like.

22         With that I remain at the Court's discretion.

23      **THE COURT:**  All right.  Thank you.

24         Anything else on the objections from the defense?

25      **MR. MCHUGH:**  No, your Honor.

23

1          **THE COURT:**  Who's going to take the lead for the

2     Government?

3          **MR. WATT:**  Your Honor, in this particular case, Lance

4     Watt for the United States.

5          I think obviously based on -- defense counsel kind of

6     touched on it.  Based on the number of filings, the defense

7     memo, I think the Court may be under the impression that the

8     parties have not been able to find any common ground in this

9     particular case.

10          I think in this particular case, the Government is

11     prepared to present evidence and witnesses as it relates to

12     some of the objections.  But I think there's some of it that's

13     not quite as contested.  And -- and the defense can certainly

14     inform the Court.

15          I think what the Court's heard this morning from

16     defense counsel is the Defendant acknowledged $350,000 in the

17     plea agreement.  He then acknowledged further that that

18     $730,000.  I think Mr. McHugh said if the Court looks and

19     acknowledges the Bermuda account, that's $2.5 million.

20          And so Probation had assessed 5.5 million, I believe.

21     But has assessed 3.5 million.  And that includes some of the

22     money that was seized by the United States from Mr. Hector

23     Javier Villarreal.  And so Mr. Hector Javier Villarreal is --

24     is here to present evidence to the Court.

25          And specifically, your Honor, I think, you know, he's

1    pled guilty to his conduct.  I think if that's what the parties

2    are still disputing, I think that's what we need to focus on.

3    It's not about what Mr. Hector Javier Villarreal's sentence

4    should be.  It's not what Mr. Luis Carlos Castillo's sentence

5    should be.

6         But this should be whether or not that money as

7    commingled, whether or not that money is attributable to this

8    Defendant.  And so --

9         **THE COURT:**  But in terms of the role, I do need to

10   know what the different roles are, correct?

11        **MR. WATT:**  Absolutely, your Honor.  And -- and moving

12   through the -- the objections, your Honor.

13        So I think the amount, I think that's what

14   Government's prepared to present witnesses for and for the

15   Court, I draw that to the Court's attention.

16        It's not lost on the Government that there are 3553

17   factors.  The Court is going to have a lot to consider in

18   determining what's an appropriate sentence.  But the issue that

19   I think both sides would agree on, is the Court has to affix

20   the proper Guideline.

21        And so, to the extent that there's a disagreement,

22   there's objections, I think the amount of money and the source

23   of some of that money is -- is very limited as to what evidence

24   the Court needs to consider.

25        The leadership role, certainly as the Court's already

1   indicated, the role between the parties, who was giving

2   directions, how was the money being distributed, sophisticated

3   means.

4        Defense has filed an objection.  These are multiple

5   bank accounts.  Different stories told to banks.  Different

6   business entities.  Over-inflated invoices, you know, money

7   moved to offshore investment accounts, properties being

8   purchased, and resold, and transferred to businesses, including

9   a residence that the Defendant was associated with in The

10  Woodlands or Conroe area outside of Houston.

11       So I think sophisticated means is something that is

12  supported in the Presentence Report and I don't know that that

13  should cause the Court too much of an issue.

14       Defendant also complains and -- and objects to two

15  levels for a 1956 conviction.

16       **THE COURT:**  I don't --

17       **MR. WATT:**  That's the statute that he pled to --

18       **THE COURT:**  And I don't think they're objecting to

19  that.

20       **MR. WATT:**  Well it was stated, I believe it was

21  stated, and it's in the sentencing memorandum.

22       **MR. SOLIS:**  That's correct, your Honor.

23       **THE COURT:**  Oh, are you all still -- I thought I

24  heard earlier that that was not being objected to.  So go

25  ahead.

26

1          **MR. WATT:**  It's --

2          **THE COURT:**  Mr. McHugh, did I hear that earlier?

3          **MR. MCHUGH:**  You -- you -- you -- you did hear that,

4   your Honor.  And you correctly heard that.

5          **THE COURT:**  Okay.

6          **MR. WATT:**  Okay.

7          So, your Honor, that's basically what the Government

8   wants -- wants the Court to understand that, you know.

9          Defense counsel also argues that this account has

10  been -- been cleared by an investigation of Mexico State

11  Government, which multiple individuals associated with this

12  case have participated in criminal while members of that State

13  Government.  And the United States has received as recently as

14  the beginning of the month, an additional request from Federal

15  officials in Mexico wanting additional information related to

16  Mr. Torres Lopez in this particular case, because they are

17  still conducting an investigation.

18          **MR. MCHUGH:**  Objection, your Honor.  That -- this has

19  no relevance to where we're going with his sentence today.

20          **THE COURT:**  Okay.  Well I guess that's in response to

21  the argument that the Mexican Government found certain things.

22  So overruled.

23          **MR. WATT:**  Correct, your Honor.

24          That's what I wanted to make sure that the Court

25  understood as far as this.  There is some common ground, I

1  think, between the parties.  And I think what we're discussing

2  is leadership role.  And I think we're discussing a small

3  amount of money as to whether or not it's 2.5 million or

4  whether or not it's over 3.5 million.

5        I -- I -- defense counsel can correct me.  But if

6  that's what we're arguing about, then -- then I would focus the

7  examination of the witnesses on that to address that for the

8  Court as thoroughly and as quickly as possible, unless the

9  defense objects or disagrees with that representation.

10       **THE COURT:**  Well they're objecting to sophisticated

11 means as well --

12       **MR. WATT:**  And -- certainly.

13       **THE COURT:**  -- at the outset.

14       **MR. WATT:**  Okay.

15       **THE COURT:**  Okay.  So --

16       **MR. WATT:**  Your Honor, at this time, the Government

17 will call Hector Javier Villarreal.

18       **(End of opening arguments.)**

19

28

```
 1                          Certification

 2        I certify that the foregoing is a correct transcript to

 3   the best of my ability from the electronic sound recording of

 4   the proceedings in the above-entitled matter.

 5

 6

 7        /s/Cheryl L. Battaglia            June 14, 2021

 8            Transcriber                        Date

 9   2:20-CR-1075-2

10   05/21/21 - 06/14/21
```